Nos. 22-50235

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

         Plaintiff-Appellee,

    v.

CHANEL WILEY,

         Defendant-Appellant.

_____

USDC No. CR-20-298-JAK

Appeal from the United States District Court
for the Central District of California
Honorable John A. Kronstadt, Judge Presiding

**APPELLANT'S OPENING BRIEF**

VERNA WEFALD
State Bar No. 127104
65 North Raymond Avenue, Suite 320
Pasadena, California 91103
Telephone: 626-577-2658
Email: verna@vernawefald.com

Attorney for Appellant Chanel Wiley
By Appointment of the Court of Appeals

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.  Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.  Basis for Subject Matter Jurisdiction in the
       District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.  Basis for Jurisdiction in the Court of Appeals . . . . . . . . . . . 2

    3.  The Judgment is Appealable . . . . . . . . . . . . . . . . . . . . . . . . 2

    4.  The Notice of Appeal Was Timely Filed . . . . . . . . . . . . . . . 3

    5.  Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.  Proceedings and Disposition in the District Court . . . . . . . . . . . 3

C.  Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.  THE EVIDENCE OF CONSPIRACY TO DISTRIBUTE
    METHAMPHETAMINE IS INSUFFICIENT . . . . . . . . . . . . . . . . 8

    A.  Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.  The law on conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.  The evidence Wiley conspired to distribute
        methamphetamine is insufficient . . . . . . . . . . . . . . . . . . . 11

II.  WILEY WAS DENIED THE PRESUMPTION OF INNOCENCE
     AND DUE PROCESS OF LAW WHEN HER ANKLE MONITOR
     STARTED BEEPING DURING JURY SELECTION . . . . . . . . 13

     A.  Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     B.  Wiley's ankle monitor started beeping during jury
         selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     C.  Unnecessary restraints in front of a jury violates the
         presumption of innocence . . . . . . . . . . . . . . . . . . . . . . . . . 16

     D.  Wiley was severely prejudiced when her ankle monitor
         started beeping during jury selection and a sidebar was
         called with an FBI agent . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

*Burks v. United States,* 437 U.S. 1 (1978) . . . . . . . . . . . . . . . . . . . . . . 12

*Chapman v. California,* 386 U.S. 18 (1967). . . . . . . . . . . . . . . . . . . . . . 21

*Cox v. Ayers,* 613 F.3d 883 (9th Cir. 2010) . . . . . . . . . . . . . . . 17, 18, 21

*Deck v. Missouri,* 544 U.S. 622 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Duckett v. Godinez,* 67 F.3d 734 (9th Cir. 1995) . . . . . . . . . . . . . . . . . 17

*Ghent v. Woodford,* 279 F.3d 1121 (9th Cir. 2002) . . . . . . . . . . . . . . . 17

*Guerrero-Lasprilla v. Barr,* 140 S.Ct. 1062 (2020) . . . . . . . . . . . . . . . 13

*Holbrook v. Flynn,* 475 U.S. 560 (1986). . . . . . . . . . . . . . . . . . . . . . . . 16

*Illinois v. Allen,* 397 U.S. 337 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Winship,* 397 U.S. 398 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jackson v. Virginia,* 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. United States,* 520 U.S. 461 (1997) . . . . . . . . . . . . . . . . 9, 12

*Juan H. v. Allen,* 408 F.3d 1262 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . 8

*Rhoden v. Rowland,* 172 F.3d 633 (9th Cir. 1999) . . . . . . . . . . . . . . . . 17

*Spain v. Rushen,* 883 F.2d 712 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . 17

*Stewart v. Corbin,* 850 F.2d 492 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 16

*United States v. Cazares,* 788 F.3d 956 (9th Cir. 2015) . . . . . . . . . . . . 13

*United States v. Cloughessy,* 572 F.2d 190 (9th Cir. 1977) . . . . . . 10, 12

*United States v. Franklin,* 321 F.3d 1231 (9th Cir. 2003) . . . . . . . . . . . 9

*United States v. Garcia,* 2022 U.S. District LEXIS 130890,

2022 WL 2904352 (D. DC. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Grovo,* 826 F.3d 1207 (9th Cir. 2016) . . . . . . . . . . . . 10

*United States v. Lennick,* 18 F.3d 814 (9th Cir. 1994) . . . . . . . . . . 10, 11

*United States v. Loveland,* 825 F.3d 555 (9th Cir. 2016) . . . . . . . . . . . 9

*United States v. Melchor-Lopez,* 627 F.2d 886 (9th Cir. 1980) . . . . 10, 12

*United States v. Navarrette-Aguilar,* 813 F.3d 785 (9th Cir. 2015) . . . . 9

*United States v. Nevils,* 598 F.3d 1158 (9th Cir. 2010) . . . . . . . . . . . . . 8

*United States v. Olano,* 507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Payne,* 944 F.2d 1458 (9th Cir. 1991) . . . . . . . . . . . . . 9

*United States v. Penagos,* 823 F.2d 346 (9th Cir. 1987) . . . . . . . . . . . 10

## STATUTES

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C.§ 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1294(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER**

Delia Paunescu, "The faulty technology behind ankle monitors –
some consider electronic monitoring an alternative to mass
incarceration.  But ankle monitors have a long way to go." *Vox*,
December 1, 2019.   https://www.vox.com/recode/2019/12/1/20986262/
ankle-monitor-technology-reset-podcast.. . . . . . . . . . . . . . . . . . . .   20

ACLU Report, News and Commentary, "Three people share how
ankle monitoring devices fail, harm, and stigmatize," September 29,
2022. https://www.aclu.org/news/ criminal-law-reform/
ankle-monitoring -devices-fail-harm-and-stigmatize . . . . . . . . . . . 20

Nos. 22-50235

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

|                                          |   |                       |
|------------------------------------------|---|-----------------------|
| UNITED STATES OF AMERICA,                | ) |                       |
|                                          | ) | USDC No. CR-20-298-JAK |
|     Plaintiff-Appellee, | ) |                       |
|                                          | ) |                       |
|     v.               | ) |                       |
|                                          | ) |                       |
| CHANEL WILEY,                            | ) |                       |
|                                          | ) |                       |
|     Defendant-Appellant. | ) |                       |

_____)

**APPELLANT'S OPENING BRIEF**

**ISSUES PRESENTED FOR REVIEW**

1.  Whether the evidence of conspiracy to distribute methamphetamine is insufficient?

2.  Whether Ms. Wiley was denied the presumption of innocence and due process of law when her ankle monitor started beeping during jury selection?

## STATEMENT OF THE CASE

**A. Nature of the Case**

    **1.    Basis for Subject Matter Jurisdiction in the District Court**

    This is an appeal from the conviction for conspiracy to distribute methamphetamine [21 U.S.C. § § 846, 841(a)(1) and (b)(1)(B)] after a jury trial before the Honorable John A. Kronstadt in the Central District of California. The district court originally had jurisdiction under 18 U.S.C. § 3231.

    **2.    Basis for Jurisdiction in the Court of Appeals**

    This Court has jurisdiction over appeals from final judgments under 28 U.S.C. § 1294(1).

    **3.    The Judgment is Appealable.**

    A conviction in a federal criminal case is a final order subject to appeal under 28 U.S.C. § 1291.

**4. The Notice of Appeal was Timely Filed.**

The judgment was entered on October 7, 2022. (CR 202; 1-ER-12)[1] The notice of appeal was timely filed on October 19, 2022. (CR 204; 2-ER-21.) Rule 4(b)(3) Fed. Rules of App. Proc.

**5. Bail Status.**

Ms. Wiley is on supervised release, having already served the 16 months imposed under the judgment.

**B. Proceedings and Disposition in the District Court**

On July 27, 2020, an indictment was filed in the Central District of California, charging Chanel Wiley and codefendant Scott Penner with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § § 846 (count one) and distribution of methamphetamine in violation of §§ 841(a)(1) and (b)(1)(B) (viii) (count two). (CR 23, 2-ER-17.)

Penner pled guilty to count one on October 21, 2021. (CR 108.) He was sentenced to 60 months on February 24, 2022. (CR 126.)

---

[1] "CR" stands for Clerk's Record; "RT" stands for Reporter's Transcripts. "ER" stands for Excerpts of Record.

On May 12, 13, and 16, 2022, Wiley had a jury trial. On May 16, 2022, she was convicted of count one but acquitted of count two. (3-ER-558.)

On October 6, 2022, Wiley was sentenced to 16 months in prison to be followed by 4 years of supervised release. (1-ER-2.)

## C. Statement of Facts

On November 14, 2019, informant Robert Carter went to Wiley's apartment on Pine Street in Paso Robles, looking for Scott Penner, Wiley's boyfriend, to do a deal for methamphetamine ("meth"). Carter secretly video recorded the deal. Wiley was not the target of the investigation, only Penner. (3-ER-320-321.)

Carter had known both Penner and Wiley for several years. (3-ER-455.)

Carter asked Penner for meth. Penner weighed it (27.9 grams of 98% pure meth)[2] and packaged it in front him. (3-ER-457.)

_____

[2] An ounce of meth ( 28.5 grams) is not for personal use. A gram of meth in Paso Robles in 2019, went for $20 to $40; an ounce for $140 to $300. Personal use is typically .1 or .2 grams. (3-ER-440.)

Wiley was not in the room during Carter's conversation with Penner or when Penner packaged the drugs. (3-ER-458.)

Carter had no conversation with Wiley about the deal and the video does not show her handling narcotics. (3-ER-323.)[3] At one point the video shows Carter saying, "I still can't find shit,"[4] and Wiley asking him "do you need crap." (3-ER-464.) "Crap" means meth. (3-ER-465.)

Wiley owed Carter money. Carter asked if she could take care of her debt of $100, as he had no money on him. He would reduce her debt by $50 and pay an additional $150. (3-ER-465.) The video shows that Carter only had the conversation about the debt reduction with Penner. (3-ER-324.)

Carter did not buy drugs from Wiley. She did not weigh the meth, offer to sell Carter any drugs, or entice him to buy any drugs. (3-ER-458.)

---

[3] Deputy Sheriff David Smith had no knowledge of whether Wiley weighed the drugs sold to Carter. (3-ER-378.)

[4] There was a narcotics raid in the San Luis Obispo area the night before. (3-ER-357-358.)

After Carter left he gave the meth to his handler. He was given $150 in cash to take back the next day. (3-ER-460.) When he returned on November 15, only Wiley was there. Carter asked if he could leave the money. When she said yes, he set it down on the table right inside the door. Carter did not tell Wiley what the money was for. (3-ER-461-462.) The video shows Carter saying "I'm leaving something for Penner." (3-ER-328.)

## SUMMARY OF ARGUMENT

Viewing the evidence in the light most favorable to the government, the evidence of conspiracy is insufficient. Wiley was not a target of the investigation. Wiley had no conversation with the informant about a drug deal and she was not present when the codefedant Scott Penner weighed and packaged the methamphetamine. When the informant dropped off some money for Penner the next day he did not say what it was for. That Wiley had an agreement with Penner to deal drugs is pure speculation and no more than guilt by association. Her conviction must be vacated and retrial barred.

Wiley's constitutional rights to the presumption of innocence and to due process were violated when her ankle monitor started beeping during jury selection. The sidebar requested by defense counsel was attended by an FBI agent. Wiley was not allowed to remove the ankle monitor which was just a condition of pretrial release. Having to wear it before the jury was not justified. She was severely prejudiced when it started beeping during voir dire because the evidence was not overwhelming but rather insufficient. She is entitled to a new trial.

**Argument**

## I. THE EVIDENCE OF CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE IS INSUFFICIENT

### A. Standard of review

The proper standard of review for a claim of insufficient evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any *rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  The factfinder needs to "reach a subjective state of near certitude of the guilt of the accused." *Id.* at 315, citing *In re Winship*, 397 U.S. 398, 363-364 (1970).

Evidence is insufficient "where mere speculation, rather than reasonable inference, supports the government's case." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) citing *Juan H. v. Allen*, 408 F.3d 1262, 1277-79 (9th Cir. 2005).

Defense counsel did not move for a judgment of acquittal under Rule 29, Fed. Rule Crim. Proc. at the close of the government's case or after the defense rested.  (1-ER-7-10.)  Therefore, the "standard

8

of review is plain error or the prevention of a manifest miscarriage of justice." *United States v. Franklin*, 321 F.3d 1231, 1239 (9th Cir. 2003).

Plain error is defined as "highly prejudicial error affecting substantial rights." *United States v. Payne*, 944 F.2d 1458, 1463 (9th Cir. 1991). "[A]n appellate court may exercise its discretion to notice a forfeited error" only if that error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 470 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). An error is plain when it is "clear" and "obvious" under the law. *Id.* at 734.

**B.     The law on conspiracy**

To establish a conspiracy the government must prove an agreement to accomplish an illegal objective and an intent to commit the underlying offense. The government can prove a conspiracy by circumstantial evidence and an express agreement is not required. *United States v. Loveland*, 825 F.3d 555, 559 (9th Cir. 2016); United *States v. Navarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir. 2015).

"Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir. 1987). Nevertheless, "evidence has to be produced to show that" the defendant "had knowledge of the conspiracy and acted in furtherance of it. Mere casual association with conspiring people is not enough." *United States v. Cloughessy*, 572 F.2d 190, 191 (9th Cir. 1977). The "government must show some actual meeting of minds between the coconspirators." *United States v. Grovo*, 826 F.3d 1207, 1216 (9th Cir. 2016).

Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, *id.*, "simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient." *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) citing *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980).

"When we rely on circumstantial evidence to establish an agreement" as to drug conspiracy, "'what we are looking for is evidence of a prolonged and actively pursued course of sales,' and 'knowledge of' and 'shared stake'" in the drug operation. *United States v. Mendoza*, 25 F.4th 730, 738 (9th Cir. 2022), citing *Lennick*, 18 F.3d at 819.

## C. The evidence Wiley conspired to distribute methamphetamine is insufficient

Viewing the evidence in the light most favorable to the government, the evidence is insufficient to prove that Wiley conspired with Penner to distribute methamphetamine. Wiley was not the target of the deal, did not have any conversation with the informant Carter about purchasing an ounce of meth, and was not present when Penner weighed and packaged the drugs. When Carter brought the money he did not tell Wiley what it was for and simply asked if he could leave it.

The only thing Wiley said was "do you need crap" when Carter said he could not find "shit." (3-ER-464-465.) This exchange is obviously nothing more than two users talking about a need for the drug.

Wiley was convicted only by association with Penner which is not sufficient. *United States v. Cloughessy*, 572 F.2d at 191. It is pure speculation that Wiley had an agreement with Penner to deal drugs. *United States v. Melchor-Lopez*, 627 F.2d at 891 ("there can be no conviction for guilt by association ...")

Despite the failure of trial counsel to move for an acquittal under Rule 29, Wiley's conspiracy conviction is plain error affecting substantial rights. *Johnson v. United States*, 520 U.S. at 470. Her conviction must be reversed. Retrial is barred under double jeopardy principles. *Burks v. United States*, 437 U.S. 1 (1978).

## II. WILEY WAS DENIED THE PRESUMPTION OF INNOCENCE AND DUE PROCESS OF LAW WHEN HER ANKLE MONITOR STARTED BEEPING DURING JURY SELECTION

### A. Standard of review

This appears to be a case of first impression. Counsel was unable to find any cases, state or federal, which specifically ruled on jurors hearing an ankle monitor beeping during a trial. However, as it is a restraint, the law on shackling may be relevant. Shackling during a jury trial is reviewed under an abuse of discretion standard. *United States v. Cazares*, 788 F.3d 956, 965 (9th Cir. 2015). To the extent that this novel issue is a mixed question of fact and law it is reviewable de novo. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020):

### B. Wiley's ankle monitor started beeping during jury selection

On June 30, 2021, Wiley was ordered by the magistrate to test for drug use and wear an ankle monitor as a condition of pretrial release.

> "It's no bracelet.  It's an electronic device.  It's strapped to
> your ankle.  It doesn't hurt.  It's not uncomfortable, but you
> will always know it's there.  It's about the size of a
> cellphone, and it tells us exactly where you are. "

(1-ER-11-12.)

If Wiley was not where she was supposed to be she would be

picked up by law enforcement.  (1-ER-12.)  "You're not going to tamper

with this device or try to take it off because, if you do, alarms go off.

I've seen it.  It's just amazing." (1-ER-12.)

Just before jury selection began, defense counsel told the

court that Wiley's ankle monitor "keeps giving out audible alerts, and

we're afraid that would be prejudicial to the jury." (2-ER-75.)  FBI

Agent Sullivan told the court it could only be removed by Pretrial.  The

court said, "let's work on that, please."  (2-ER-75.)

Nevertheless, as jury selection was underway, the ankle

monitor had not been removed.  After several prospective jurors were

questioned by the court, defense counsel asked for a sidebar.  (2-ER-

119.)

> *Defense counsel*: I apologize, Your Honor.  Ms. Wiley's ankle
> monitor keeps alerting.  And every juror on this side is
> hearing it and seeing I have to fiddle with it, and we believe
> she's been severely prejudiced.

14

*The court*: Well, I don't think I agree with that, Mr. Bernstein.  I've heard it too, but I don't think anyone really knows what that sound is.

*Prosecutor*:   Your Honor, we have a person available to take care of this.

*FBI Agent*: Your Honor, there's two options.

*The court*: Speak into the microphone, please.

*FBI Agent*: I apologize.  Your Honor, there's two options.  I spoke with Pretrial Services.  They indicated that the battery is at 10 percent because Ms. Wiley failed to charge it correctly.  They said that they manually turned the device off at their main station, and it should no longer make an audible noise.  ¶  They did authorize, I can cut the device off if they want.  But they said they deactivated it.  So based upon that, I'm surprised it's still making any noise.  But we can cut it off, Your Honor.

*The court*: Okay.  Just a moment. ¶ All right.  Let's do the following.  I will have you cut it off.  But to do that, we obviously have to send everybody out.  So if it alerts again, then I'll – I'll have a recess.  If it doesn't, then we'll just leave it alone for now and then remove it.

*Defense counsel*: Thank you.

(1-ER-13-15; 2-ER-120-121.)

The jury was selected from the original pool.  (2-ER-76-210.)

**C.    Unnecessary restraints in front of a jury violates the presumption of innocence**

Because a beeping ankle monitor heard by the jurors is akin to shackling it is important to summarize the well settled law.

The appearance of a defendant in shackles before a jury may constitute a violation of due process. *Deck v. Missouri*, 544 U.S. 622 (2005). "Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process" because it "suggests to the jury that the justice system itself sees a 'need to separate a defendant from the community at large." *Id.* at 630, citing *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986). When a defendant appears before a jury she is "ordinarily entitled to be relieved of handcuffs, *or other unusual restraints*, so as not to mark [her] as an obviously bad [woman] or to suggest that the fact of [her] guilt is a foregone conclusion." *Stewart v. Corbin*, 850 F.2d 492, 497 (9th Cir. 1988) (emphasis added). See *Illinois v. Allen*, 397 U.S. 337, 344 (1970) ("Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is

itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.")

"A defendant has the right to be free of shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest." *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002). See *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("because visible shackling during the trial is so likely to cause a defendant prejudice, it is permitted only when justified by an essential state interest specific to each trial.")

The court may order that a defendant be shackled during trial only if the court first is "persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom" and if the court pursues "less restrictive alternatives before imposing physical restraints." *Cox v. Ayers*, 613 F.3d 883, 890 (9th Cir. 2010) citing *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995). "Due process requires that shackles be imposed only as a last resort." *Spain v. Rushen*, 883 F.2d 712, 728 (9th Cir. 1989).

To demonstrate that shackling (or beeping ankle monitors) at trial amounted to a constitutional violation the defendant must demonstrate: (1) that she was physically restrained in the presence of the jury; (2) that the shackling was seen by the jury; (3) that the physical restraint was not justified by state interests; and (4) that she suffered prejudice as a result.  *Cox v. Ayers*, 613 F.3d at 890 (citations omitted).

Shackling during the trial carries a high risk of prejudice. Nevertheless, this Court has held that the unconstitutional shackling of a defendant results in prejudice only if the evidence of guilt is not "overwhelming."  *Cox v. Ayers*, 613 F.3d at 891.

**D.  Wiley was severely prejudiced when her ankle monitor started beeping during jury selection and a sidebar was called with an FBI agent**

It is undisputed that Wiley's beeping ankle monitor was heard by the jury.  The court heard it too.  Having to wear the ankle monitor while the jury was present was not justified for any reason.

She was not allowed to remove it.  It was only ordered as a condition of pretrial release.  Wiley appeared for her trial without problems.

The court was notified before jury selection began that the ankle monitor was beeping.  Although the court asked the FBI agent to work on removing it, this was not done before voir dire began.

The presumption of innocence was compromised because the sidebar called by her lawyer while the ankle monitor beeped was attended by an FBI agent.  The jury had to know Wiley was subject to some type of restraint, particularly when it watched her lawyer fiddling with it while it beeped.  And the jury had to know the FBI agent was some type of law enforcement officer as he sat with the three prosecutors who introduced themselves to the jury.  (2-ER-75-76.)

Even if the jurors had not heard that particular sound before, beeping ankle monitors are something that the general public is surely aware of.  One of the defendants in the January 6 siege on the capitol received publicity in *The Washington Post* after he asked the court to remove it, because "his ankle monitor beeps too loudly." *United States v. Garcia,* 2022 U.S. Dist. LEXIS 130890, [*19, n.11]; 2022 WL

2904352 (D. DC. 2022).  Garcia told the court that the ankle monitor would constantly go off at his job.[5]

Further, Wiley was unfairly blamed for the beeping when the FBI agent asserted she had not charged it properly.  Even after it was deactivated by Pretrial Services it continued to beep. (1-ER-12.)

Ankle monitors are notorious for malfunctioning.  See Delia Paunescu, "The faulty technology behind ankle monitors – some consider electronic monitoring an alternative to mass incarceration. But ankle monitors have a long way to go." *Vox*, December 1, 2019.[6] The ACLU wants to eliminate ankle monitoring altogether.  See ACLU Report, News and Commentary, "Three people share how ankle monitoring devices fail, harm, and stigmatize," September 29, 2022[7]

Wiley suffered prejudice from the beeping ankle monitor because the evidence of conspiracy was not overwhelming.   Indeed, it

---

[5] See https:// www.washingtonpost.com/nation/2021/09/10/ capitol-rioter-ankle-monitor-beeping.

[6] See https://www.vox.com/recode/2019/12/1/20986262/ ankle-monitor-technology-reset-podcast.

[7] See  https://www.aclu.org/news/ criminal-law-reform/ ankle-monitoring -devices-fail-harm-and-stigmatize

was insufficient, as argued above.  She was acquitted of distribution.

Had the jury not surmised she was at least guilty of some crime (or

that she was a bad person) that required her to have something on her

that beeped -- prompting the FBI to get involved – she would not have

been convicted of conspiracy.

Wiley easily satisfies the four pronged test of *Cox v. Ayers*,

613 F.3d at 890.  Her constitutional rights to due process and the

presumption of innocence were violated.  The prosecution cannot prove

the error was harmless beyond a reasonable doubt.  *Chapman v.*

*California,* 386 U.S. 18 (1967).   Wiley is entitled to a new trial.

## CONCLUSION

For the foregoing reasons, Chanel Wiley's conspiracy conviction must be reversed.

Date: May 4, 2023         Respectfully submitted,

/s verna wefald

VERNA WEFALD

Attorney for Appellant Chanel Wiley

## CERTIFICATE OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel certifies that she is not aware of any related cases.

Date: May 4, 2023

Respectfully submitted,

/s/   Verna Wefald

VERNA WEFALD

Attorney for Chanel Wiley

**CERTIFICATE OF COMPLIANCE**

Pursuant to Ninth Circuit Rule 32(e)(4), I certify that the opening brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,482 words.

Date: May 4, 2023          Respectfully submitted,

/s/ Verna Wefald

VERNA WEFALD

Attorney for Chanel Wiley